1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   SAN DIEGO NAVY BROADWAY                          CASE NO. 10cv2565-IEG(RBB)
     COMPLEX COALITION,
12
                                    Plaintiff,
13          vs.
                                                        Order Denying Temporary
14                                                      Restraining Order
     UNITED STATES COAST GUARD;
15   CAPTAIN THOMAS M. FARRIS, in his
     official capacity as the United States Coast
16   Guard Captain of the Port, San Diego; SAN
     DIEGO UNIFIED PORT DISTRICT;
17   ROBERT VALDERRAMA, in his official
     capacity as San Diego Unified Port District
18   Commissioner; STEPHEN C. PADILLA, in
     his official capacity as San Diego Unified
19   Port District Commissioner; MICHAEL B.
     BIXLER, in his official capacity as San
20   Diego Unified Port District Commissioner;
     STEPHEN P. CUSHMAN, in his official
21   capacity as San Diego Unified Port District
     Commissioner; LOU SMITH, in his official
22   capacity as San Diego Unified Port District
     Commissioner;and JOHN A. BULDUC, in
23   his official capacity as the Chief of Harbor
     Police for the San Diego Unified Port
24   District,

25                                 Defendants.

26          Plaintiff San Diego Navy Broadway Complex Coalition ("SDNBCC") has filed a

27   Complaint  for Declaratory, Injunctive, and Mandamus Relief, alleging that Defendants, the U.S.

28   Coast Guard, Captain Thomas Farris, the San Diego Unified Port District, the Port District

1  Commissioners, and the Chief of Harbor Police for the Port District, have failed to enforce federal

2  laws and regulations with respect to establishing a security zone on shore around cruise ships

3  entering and berthing in the Port of San Diego.  Presently before the Court is Plaintiff's application

4  for a temporary restraining order, to enforce the 100-yard security zone on the shore when the

5  Holland America Line *Oosterdam* is at Broadway Pier in the Port of San Diego, beginning on

6  December 22, 2010[1], and when any other cruise ships are berthed at the Pier and within 100 yards

7  of the shore at the Broadway Pier. The security zone Plaintiff asks the Court to enforce by a TRO

8  would require closure of portions of the intersection of Harbor Drive and Broadway.[2]

9       The San Diego Unified Port District, its Commissioners, and the Chief of Harbor Police

10  (collectively "Port District") and the U.S. Coast Guard and Captain Farris (collectively "federal

11  Defendants"), each filed oppositions to the Plaintiff's motion for a TRO.  Just prior to the hearing,

12  Plaintiff filed additional declarations.  At the time of the hearing, Plaintiff indicated it intends to

13  dismiss the Port District from this case based upon the Port's representations regarding the scope

14  of its duties in enforcing the security zone.  Nonetheless, the Port Distirict is currently a party to

15  this action and the Court will address Plaintiff's claims against the Port District herein.

16                                   ***Background***

17       The Port District is the owner and operator of the B Street Pier and Broadway Pier in San

18  Diego Harbor.  The Port District uses the B Street Pier as the primary berth for cruise ships

19  visiting San Diego.  When the two berths at the B Street Pier are occupied or otherwise

20  unavailable, the Port District intends to use Broadway Pier to provide auxillary berthing for cruise

21  ships.  The Port District recently completed construction of a new cruise ship terminal at the

22  Broadway Pier and expects to welcome the first ship at the new terminal on Wednesday,

23  December 22, 2010.

24  _____

25       [1]As of the time of the hearing, it appears the *Oosterdam* will not be berthed at the
    Broadway Pier on December 22, but will be there on December 26, 2010.

26

27       [2]At the hearing, Plaintiff's counsel argued the Court would not (and likely could not)
    dictate that the Port District or Coast Guard close public access to the entire on-shore security
    zone.  This is contrary to the arguments made by Plaintiff in its application for a TRO – the
28  practical effect of the relief Plaintiff seeks is to require closure of portions of Harbor Drive
    including the Broadway intersection.

Pursuant to 33 C.F.R. § 165.1108, the following areas are defined as "security zones":

(1)   All waters, extending from the surface to the sea floor, within a 100 yard
radius around any cruise ship that is anchored at a designated anchorage
within the San Diego port area inside the sea buoys bounding the port of
San Diego.

(2)   The shore area and all waters, extending from the surface to the sea floor, within a
100 yard radius around any cruise ship that is moored at any berth within the San
Diego port area inside the sea buoys bounding the Port of San Diego; and

(3)   All waters, extending from the surface to the sea floor, within a 100 yard radius
around any cruise ship that is underway on the waters inside the sea buoys
bounding the Port of San Diego.

§ 165.1108(b). Furthermore, "[i]n accordance with the general regulation in § 165.33 of the part,

entry into or remaining in these zones is prohibited unless authorized by the Coast Guard Captain

of the Port, San Diego or his designated representative." Plaintiff argues that Defendants are

required to enforce the 100-yard security zone around any cruise ship berthing at Broadway Pier.

The Broadway Pier is approximately 960 feet long. The *Oosterdam* is approximately 936 feet.

Therefore, the security zone would extend on-shore at least 275 feet, encompassing not only the

boardwalk in front of Broadway Pier but also the entire intersection of Broadway and Harbor

Drive.

Although the same security regulations apply to the B Street Pier, Plaintiff does not

challenge the Defendants' enforcement of regulations at that location. The Coast Guard's security

plan is "sensitive security information" which the Coast Guard and Port District are prohibited

from disclosing. 33 U.S.C. § 1226(d); 49 C.F.R. § 1520.3, 1520.5(b), 1520.9, 1520.15; 33 C.F.R.

§ 105.400(c). Earlier this year, Plaintiff submitted a FOIA request to the Coast Guard, seeking

documents showing who has requested permission to enter the security zones in the Port of San

Diego, whose request was granted, and whose request was denied. The Coast Guard responded by

indicating there were no responsive documents. Both the Coast Guard and the Port District in

their papers opposing the TRO have declined to explain exactly how they intend to secure the Port

without enforcing the 100 yard on-shore security zone.

### ***Legal Standard***

In determining whether to grant a temporary restraining order or preliminary injunction,

the Court applies the preliminary injunction standard articulated in <u>Winter v. Natural Res. Def.

Council, Inc.</u>, 555 U.S. 7, 129 S.Ct. 365 (2008). A party seeking a preliminary injunction must

demonstrate: (1) the likelihood of success on the merits; (2) the likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  129 S. Ct. at 374.  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Id. at 375-76.  Where the requested injunction goes well beyond maintaining the status quo, and instead mandates action, a heightened standard applies – the court must find that the "facts and law clearly favor" the moving party.  Katie A., ex rel. v. Los Angeles County, 481 F.3d 1150, 1157 (9th Cir. 2007) (quoting Stanley v. University of Southern California, 13 F.3d 1313, 1320 (9th Cir. 1994)).

### ***Discussion***

Defendants raise a number of arguments in opposition to the Plaintiff's application.  Upon review, the Court has reservations about Defendants' mootness and standing arguments.  Nonetheless, as explained below, the Court finds Plaintiff has not demonstrated a likelihood of success on the merits of its claim for mandamus and injunctive relief.  Furthermore, the likelihood of irreparable harm in the absence of preliminary relief, the balance of equities, and the public interest, all militate in favor of denying a temporary restraining order.

### *A.*      *Likelihood of Success on the Merits*

Mandamus is a drastic remedy to be invoked only in extraordinary circumstances.  Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003).  Mandamus is available to compel a federal official perform a duty only where: "(1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available."  Id. (quoting Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1998)).  Where the effect of a mandatory injunction is the equivalent of mandamus, it is governed by the same standard.  Oregon Natural Resources Council v. Harrell, 52 F.3d 1499, 1508 (9th Cir. 1995)).  Defendants argue the Plaintiff has failed to establish that the Coast Guard has a nondiscretionary, ministerial duty to enforce a security zone in the manner Plaintiff demands, such that Plaintiff is not likely to succeed on its claim for mandamus and injunctive relief.

The regulations provide that the term "security zone"

> [M]eans all areas of land, water, or land and water, which are so designated by the Captain of the Port for such time as he deems necessary to prevent damage or injury

1
> to any vessel or waterfront facility, to safeguard ports, harbors, territories, or waters
> of the United States or to secure the observance of the rights and obligations of the
2
> United States.

3   33 C.F.R. § 6.01-5.  The Captain of the Port ("COTP") is a Coast Guard officer who is responsible

4   for enforcing Port safety and security regulations.  33 C.F.R. § 6.01-3.  The COTP "may cause to

5   be inspected and searched at any time any vessel, waterfront facility, or security, or any person,

6   article or thing thereon or therein ... and may remove therefrom any and all persons, articles, or

7   things not specifically authorized by him to go or remain thereon or therein."  33 C.F.R. § 6.04-7.

8     Regulations specific to security zones similarly provide authority to the COTP, who "may

9   remove" any person or vessel from a security zone."  33 C.F.R. § 165.33(d).  The regulation

10   establishing a 100 yard on-shore security zone in San Diego similarly vests discretion in the COTP

11   to permit entry into the security zone.  33 C.F.R. § 165.1108(c)(1).  Nothing within these

12   regulations expressly requires the Coast Guard to enforce an on-shore security zone in any

13   particular manner.  The applicable regulations demonstrate that the manner in which the Coast

14   Guard enforces the security zone, including allowing individuals or vessels within the security

15   zone, is within the Coast Guard's discretion.  The enforcement of the security zone by the Coast

16   Guard is an executive, law enforcement, function.  Therefore, the Court concludes Plaintiff has not

17   shown a likelihood of success on the merits of its claim for mandamus or injunctive relief as

18   alleged.

19   **B.**   ***Likelihood of Irreparable Harm***

20     Plaintiff argues the potential harm of a terrorist attack, and the danger to national security,

21   weighs in favor of a TRO.  However, as Defendants note, the B Street Pier presents similar

22   security issues and Plaintiff does not seek to enforce the regulation as to that location.

23   Furthermore, cruise ships have been using the Broadway Pier for many years, and Plaintiff has not

24   persuasively shown changed circumstances that justify a TRO.

25   **C.**   ***Balance of Equities/Public Interest***

26     Plaintiff argues a TRO is in the public interest because Defendants' failure to enforce the

27   on-shore security zone implicates national security.  However, Plaintiff's claim is belied by the

28   fact it has not sought to enforce the regulation as to the B Street Pier.  In addition, it would create a

1   tremendous burden on the public if the boardwalk in front of Broadway Pier, extending to the

2   intersection of Harbor Drive and Broadway, is closed to public access for a period of time while a

3   cruise ship is berthed at the Broadway Pier.  The potential harm alleged by Plaintiff is purely

4   speculative, and does not justify the relief sought by Plaintiff.

5                                                 *Conclusion*

6        For the reasons explained herein, the Court DENIES Plaintiff's motion for a temporary

7   restraining order and preliminary injunction.

8        **IT IS SO ORDERED**.

9   **DATED:  December 21, 2010**

10

11  **IRMA E. GONZALEZ, Chief Judge**
    **United States District Court**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28